[Cite as *State v. Elliott*, 2012-Ohio-3350.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| V. | ) | CASE NO. 11 MA 182 |
| | ) | |
| CURTIS J. ELLIOTT, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Mahoning County
Area Court #5 of Mahoning County, Ohio
Case No. 11CR42

JUDGMENT:    Reversed and Remanded in part
Affirmed in part

APPEARANCES:
For Plaintiff-Appellee    Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant    Attorney Joshua R. Hiznay
1040 S. Commons Place, Suite 202
Youngstown, Ohio 44514

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: July 11, 2012

DONOFRIO, J.

{¶1} Defendant-appellant, Curtis Elliott, appeals from a Mahoning County Area Court #5 judgment overruling his motion to suppress drugs found inside his vehicle and statements he made to police.

{¶2} In the early evening hours of February 7, 2011, appellant was driving on East Main Street in Canfield. Canfield Police Sergeant Scott Bennett stopped appellant for having only one working headlight and a broken taillight. Appellant pulled into a gas station parking lot. According to Sgt. Bennett, appellant's pupils were extremely dilated and he seemed disoriented and lethargic. However, Sgt. Bennett did not smell alcohol or marijuana. Sgt. Bennett asked appellant to step out of his car. While stepping out, Sgt. Bennett stated that appellant braced himself on his car. Once appellant was outside of his vehicle, Sgt. Bennett asked appellant's permission to search the car. Appellant declined consent. He did grant the sergeant consent to search his person, which resulted in finding nothing illegal.

{¶3} Sgt. Bennett then called for a K-9 unit to search the car. While they were waiting for the K-9 unit, appellant told Sgt. Bennett he was not feeling well and asked if he could kneel down. Sgt. Bennett was then notified that the K-9 unit was not coming. At that point, Sgt. Bennett decided to administer the standard field sobriety tests. According to the sergeant, appellant failed two of the three field sobriety tests and did not complete the third test. Sgt. Bennett then placed appellant under arrest for OVI and placed him in the cruiser.

{¶4} Officer Mark Meshula arrived on the scene to assist Sgt. Bennett. Officer Meshula completed an inventory of appellant's vehicle. In the vehicle, Officer Meshula found a metal pipe containing marijuana residue and a half-smoked marijuana cigarette under the driver's seat. The officer also found a small glass vile containing methamphetamine located in a lock box inside the driver's side door pocket.

{¶5} Meanwhile, at the police station, appellant admitted that the pipe and cigarette were his but denied that the methamphetamine was his. According to Sgt. Bennett, it is standard procedure to have suspects sign Miranda waivers before

speaking with the police. However, he did not remember if appellant signed a waiver and, at the suppression hearing, did not produce a waiver.

{¶6} Sgt. Bennett subsequently charged appellant with OVI, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(a); possession of marijuana, a minor misdemeanor in violation of R.C. 2925.11(A); possession of drug paraphernalia, a fourth-degree misdemeanor in violation of R.C. 2925.14; and having a missing headlight, a minor misdemeanor in violation of R.C. 4513.04.

{¶7} Appellant filed a motion to suppress all evidence obtained from his warrantless search and seizure, alleging a myriad of violations. The trial court held a hearing on his motion where it heard testimony from Sgt. Bennett. The court subsequently overruled the motion.

{¶8} The matter proceeded to a jury trial where the jury found appellant guilty as charged. The court subsequently sentenced appellant to 180 days in jail, 150 suspended; a $1,000 fine, $400 suspended; 12 months reporting probation; and a 12-month license suspension on the OVI. It fined him $25 for the headlight violation. It sentenced him to 30 days in jail, to be served concurrently with the OVI sentence; a $250 fine; 12 months of reporting probation; and a 6-month license suspension for the drug paraphernalia offense. And it fined appellant $150 and ordered a 6-month license suspension for the marijuana possession.

{¶9} Appellant filed a timely notice of appeal on October 14, 2011.

{¶10} After a denial in the trial court, this court granted appellant a stay of execution of his sentence pending this appeal.

{¶11} Appellant raises a single assignment of error, which states:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT
CURTIS ELLIOTT'S MOTION TO SUPPRESS.

{¶12} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th

Dist. 1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist. 1994). Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist. 1994). An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice*, 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist. 1998). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Id*.

{¶13} Although he only raises one assignment of error, this assignment of error is broken down into seven separate and distinct arguments. However, we only reach the first argument because it is dispositive of the appeal.

{¶14} Appellant's first argument states:

> Officer Bennett lacked reasonable suspicion to prolong the length of the traffic stop beyond the time necessary to issue a citation for a broken headlight.

{¶15} Appellant argues that in light of the fact that Sgt. Bennett testified that it usually takes him less than ten minutes to write a traffic ticket, the 30-minute stop here was unreasonable. Appellant asserts that once Sgt. Bennett checked his criminal background and discovered that he had a prior arrest for methamphetamine, the sergeant prolonged the traffic stop to find a reason to search his car. Appellant further points out that while Sgt. Bennett based his prolonged stop in part on appellant's slurred speech, Sgt. Bennett could not point to any words that appellant slurred when the video from the stop was played. He contends that Sgt. Bennett lacked reasonable suspicion to prolong the traffic stop beyond the time necessary to write a traffic ticket.

{¶16} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 850 N.E.2d 698, 2006-Ohio-3563, ¶11. When the police stop a vehicle based on probable cause that traffic violation has occurred, the stop is reasonable under the Fourth Amendment. *Id.*, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996).

{¶17} When a police officer stops a vehicle for a traffic violation, the officer may detain the driver for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the driver's license, registration and vehicle plates. *State v. Aguirre*, 4th Dist. No. 03CA5, 2003-Ohio-4909, ¶36.

> When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.

{¶18} *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997), paragraph one of the syllabus. Nonetheless, if the circumstances give rise to a reasonable suspicion of some other illegal activity, different than that which triggered the stop, then the officer may detain the driver for as long as the new articulable reasonable suspicion exists. *State v. Myers*, 63 Ohio App.3d 765, 771, 580 N.E.2d 61 (2d Dist. 1990).

{¶19} In this case, Sgt. Bennett stopped appellant at 7:07 p.m. (Tr. 5). At 7:13 p.m., Sgt. Bennett went back in his cruiser and ran a check of appellant's license on his computer. (Tr. 45). Sometime shortly thereafter, Sgt. Bennett

requested a K-9 unit. (Tr. 43). At 7:43 p.m., Sgt. Bennett was informed that the K-9 unit was not coming. (Tr. 47). At this point, Sgt. Bennett had appellant perform the field sobriety tests. (Tr. 43-44).

{¶20} Sgt. Bennett testified that it typically takes him under ten minutes to write a traffic ticket for something like a broken taillight. (Tr. 24-25). He stated that while he was in his cruiser running the computer check on appellant's license, he could have written appellant a traffic ticket for the taillight but did not because he still had a further investigation for impaired driving. (Tr. 33).

{¶21} Sgt. Bennett also testified about his initial encounter with appellant. He stated that appellant was "disoriented and seemed to be confused." (Tr. 6). By confused, Sgt. Bennett stated that appellant did not seem to understand the questions he asked. (Tr. 6). Additionally, appellant initially told Sgt. Bennett he was coming from work. (Tr. 6-7). But later appellant told the sergeant he was on his way to work. (Tr. 7). Appellant's pupils were "extremely dilated." (Tr. 6). Appellant slurred his speech. (Tr. 33). And appellant had to brace himself on his vehicle when he exited it. (Tr. 7). Based on appellant's behavior, Sgt. Bennett suspected that appellant was under the influence of an illegal drug. (Tr. 20).

{¶22} In determining whether an officer completed the tasks of running a computer check on the detained motorist's driver's license, issuing a ticket or warning, and completing the investigation, we must evaluate the totality of the circumstances and consider whether the officer diligently conducted the investigation. *State v. Grenoble*, 12th Dist. No. CA2010-09-011, 2011-Ohio-2343, ¶28.

{¶23} The officer may conduct a canine sniff of the vehicle during the time required to effectuate the original purpose of the stop. *Id.* ¶30. If the officer conducts a canine sniff of the vehicle before the reasonable completion of the traffic stop procedures, the officer does not need additional suspicion of criminal activity to conduct the sniff. *State v. Winger*, 2d Dist. No. 1688, 2007-Ohio-2605, ¶17, citing *State v. Colton*, 2d Dist. No. 20760, 2005-Ohio-4494, and *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523. However, if the officer extends the

traffic stop in order to conduct a canine sniff, he must have reasonable suspicion that the vehicle contains drugs in order to detain the driver while a canine unit is brought to the scene. *Id.*, citing *Ramos*, supra.

**{¶24}** Here, Sgt. Bennett prolonged the traffic stop in order to wait for a canine unit to arrive. Thus, he was required to have reasonable suspicion that appellant's vehicle contained drugs in order to detain appellant. Sgt. Bennett's testimony indicated that he believed appellant was under the influence of drugs. But he gave no testimony to suggest that he believed there were drugs in appellant's vehicle.

**{¶25}** Furthermore, Sgt. Bennett testified that it usually takes him under ten minutes to write a traffic citation. The traffic stop in this case began at 7:07 p.m. And Sgt. Bennett ran a check of appellant's license at 7:13 p.m. By 7:43 p.m., 36 minutes after the initial stop, Sgt. Bennett had still not written appellant's traffic citation. Moreover, even though Sgt. Bennett testified that he believed appellant was under the influence, he did not ask appellant to submit to the field sobriety tests until 7:43 p.m. when he was informed that the canine unit was not coming. For 30 minutes, Sgt. Bennett did nothing but detain appellant. He did not issue the traffic citation and he did not investigate his suspicion of OVI by asking appellant to complete the field sobriety tests. There was no testimony as to what took place during this time so presumably appellant and the sergeant were simply waiting in the gas station parking lot.

**{¶26}** It was not until Sgt. Bennett was informed that the canine unit was not coming that he asked appellant to submit to the field sobriety tests. Thus, it seems that once Sgt. Bennett learned that he would not be able to search appellant's car with a canine sniff, he decided to take a different approach. Had Sgt. Bennett truly suspected that appellant was under the influence, he could have used the half-hour in the parking lot to conduct the field sobriety tests. He also had plenty of time to write the traffic citation for the broken taillight. Yet he did nothing but detain appellant during this time.

**{¶27}** The initial traffic stop in this case was clearly reasonable. But the initial lawfulness of a traffic stop will not support a "fishing expedition" for evidence of a crime. *State v. Gonyou*, 108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th Dist.1995), citing *State v. Smotherman*, 6th Dist. No. 93WD082, 1994 WL 395128 (July 29, 1994). Sgt. Bennett's testimony, coupled with the duration of the stop, indicates that he was fishing for evidence of a crime.

**{¶28}** As such, Sgt. Bennett acted unreasonably in failing to write the traffic citation and in failing to conduct the field sobriety tests while detaining appellant for half-hour waiting for a canine unit to arrive.

**{¶29}** While the Fourth Amendment of the United States Constitution does not explicitly state that the violation of its provisions against unlawful search and seizure will result in suppression of the evidence obtained as a result of the violation, the United States Supreme Court held that the exclusion of evidence is an essential part of the Fourth Amendment. *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, ¶10, 771 N.E.2d 331 (7th Dist.), citing *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341, 58 L.Ed. 652 (1914), *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The primary purpose of the exclusionary rule is to remove incentive from the police to violate the Fourth Amendment. *Id.*, citing *State v. Jones*, 88 Ohio St.3d 430, 435, 727 N.E.2d 886 (2000).

**{¶30}** Because the prolonged stop in this case was unreasonable, the trial court should have sustained appellant's motion to suppress all evidence obtained as a result of the stop.

**{¶31}** Accordingly, appellant's sole assignment of error has merit.

**{¶32}** For the reasons stated above, appellant's convictions for OVI, possession of drug paraphernalia, and possession of marijuana are hereby reversed. Appellant's conviction for the missing headlight violation is affirmed. The matter is remanded to the trial court for further proceedings where the evidence obtained as a result of the stop shall be suppressed.

Waite, P.J., concurs.

DeGenaro, J., concurs.