[Cite as *State v. Chapman*, 2019-Ohio-3339.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOHN LAVELL CHAPMAN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 BE 0004**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 17 CR 208

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Dan Fry*, Belmont County Prosecutor, and *Atty. J. Flanagan*, Assistant Prosecuting Attorney, 147-A West Main Street, St. Clairsville, Ohio 43950, for Plaintiff-Appellee and

*Atty. Adam Myser*, 320 Howard Street, Bridgeport, Ohio 43912, for Defendant-Appellant.

Dated:  August 15, 2019

_____

**D'Apolito, J.**

{¶1}   Appellant John Lavell Chapman appeals the judgment entry of the Belmont County Court of Common Pleas denying his motion to suppress drugs found during a warrantless search of his person, following a canine alert on a vehicle in which he was a passenger.  Appellant entered a no contest plea to two counts of drug possession, in violation of R.C. 2925.11(A)(C)(6)(d) (cocaine) and 2925.11(A)(C)(4)(c) (heroin), both felonies of the second degree, and one count of trafficking in drugs, in violation of R.C. 2925.03(A)(2)(C)(4)(d), a felony of the third degree, with a forfeiture specification pursuant to R.C. 2941.1417.  The trial court imposed an aggregate sentence of eleven years.

{¶2}   Appellant contends that the trial court erred in concluding that:  (1) the police officer did not unlawfully extend the traffic stop in order to conduct the canine sniff; (2) the canine alert at the passenger side door constituted probable cause to search Appellant's person; and, finally, (3) exigent circumstances existed for the warrantless search.  No response brief was filed.  For the following reasons, the judgment of the trial court denying the motion to suppress is reversed and the case is remanded to the trial court for further proceedings.

## STANDARD OF REVIEW

{¶3}   "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Because the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence.  *Id.* However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard.  *Id.*

{¶4}   Although considerable deference is afforded to a probable cause determination made by a magistrate, we review a police officer's decision to conduct a

warrantless search de novo. *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The *Ornelas* Court opined:

> The Court of Appeals, in adopting its deferential standard of review here, reasoned that *de novo* review for warrantless searches would be inconsistent with the " 'great deference' " paid when reviewing a decision to issue a warrant, see *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). See *United States v. Spears*, 965 F.2d 262, 269–271 (C.A.7 1992). We cannot agree. The Fourth Amendment demonstrates a "strong preference for searches conducted pursuant to a warrant," *Gates*, *supra*, at 236, 103 S.Ct., at 2331, and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would eliminate the incentive.

*Id.* at 698-99.

### FACTS AND PROCEDURAL HISTORY

**{¶5}** The following facts are taken from the testimony of Belmont County Sheriff's Deputy Brian Carpenter at the bifurcated hearing on the motion to suppress conducted on September 8 and 25, 2017. The hearing was continued because the dash camera and body camera footage from the Sheriff's deputies that were present during the latter part of traffic stop was not available at the September 8th hearing.

**{¶6}** The body camera footage of three Sheriff's deputies (including Deputy Carpenter) was provided to Appellant's trial counsel prior to the September 25th hearing. Deputy Carpenter's body camera footage and the dash camera footage, which was provided for the first time on September 25th, were both viewed by the trial court in their entirety during the hearing.

**{¶7}** Deputy Carpenter testified that he had been employed by the Belmont County Sheriff's Office for over six years, and was a canine handler with a primary focus on drug interdiction since 2015. Deputy Carpenter's specialized drug interdiction training

included the identification of drugs, as well as the identification of behaviors commonly associated with drug possession, use, and sale.

**{¶8}** On July 4, 2017, shortly after 2:00 a.m., Deputy Carpenter initiated a traffic stop of a vehicle driven by Steven Moore. Appellant, who was the only passenger, was in the front passenger seat. Appellant concedes that Deputy Carpenter had probable cause for the initial traffic stop.

**{¶9}** After Moore pulled the vehicle to the side of the road, Appellant "lean[ed] very far forward and kind of down towards the floor board area." At the September 8th hearing, Deputy Carpenter testified that Appellant "was there for a brief moment and then sat straight back up in his seat." (9/8/17 Hrg. Tr. 15). After viewing the body camera footage at the September 25th hearing, Deputy Carpenter conceded that he told the dispatcher that Appellant was making many furtive movements as Deputy Carpenter was walking up to the vehicle, rather than immediately after the vehicle had stopped at the side of the road. At the September 25th hearing, Deputy Carpenter testified that Appellant was moving around both immediately after the vehicle came to a stop and as Deputy Carpenter approached the vehicle.

**{¶10}** Deputy Carpenter approached the passenger side of the vehicle and informed Moore that his rear license plate was not illuminated and neither the expiration sticker nor the county sticker was visible. Deputy Carpenter immediately noticed that the zipper on Appellant's pants was undone.

**{¶11}** Moore was visibly nervous and his hands were trembling. When Deputy Carpenter informed Moore about the license plate and tags, Moore jumped out of the vehicle to look at the plate. Deputy Carpenter explained to Moore that he needed additional information and instructed Moore to reenter the vehicle. Deputy Carpenter advised Moore that he would receive only a warning if there were no other issues.

**{¶12}** Appellant was also very nervous. While speaking with Moore, Deputy Carpenter noted that Appellant was staring straight ahead as if he did not want to look at Deputy Carpenter. Appellant's forehead was sweaty. After viewing the body camera footage, Deputy Carpenter conceded at the September 25th hearing that Appellant was looking at his mobile telephone while Deputy Carpenter questioned Moore. Deputy

Carpenter further conceded that he himself was noticeably sweating during the traffic stop.

{¶13} Deputy Carpenter ran the drivers' license numbers of both occupants through dispatch prior to the canine sniff. After collecting information relevant to the traffic stop, Deputy Carpenter spoke with the men about their reason for being in the area and their current destination. Appellant indicated that they had just attended a party where Appellant had been drinking.

{¶14} Appellant, who was a resident of Cleveland, Ohio according to his driver's license, explained that he was in Belmont County looking for work with the pipeline. He asked Deputy Carpenter if he was aware of any job opportunities in the area. Unprompted, Appellant began showing Deputy Carpenter photos from Appellant's Facebook page, which depicted Appellant performing various construction jobs.

{¶15} At that time, Deputy Carpenter returned to his cruiser and radioed for backup. Appellant continued to show Deputy Carpenter random pictures until the additional Sheriff's deputies arrived at the scene.

{¶16} Roughly eight minutes after the traffic stop was initiated, with the Sheriff's deputies in position, Deputy Carpenter's canine, Hyra, a Belgian Malinois trained in the detection of narcotics, performed a sniff. Deputy Carpenter testified that Hyra had been specially trained in the detection of narcotic odors, had received annual certifications through the State of Ohio, and that she was in the cruiser with Deputy Carpenter that evening. He was uncertain whether the canine sniff occurred before or after the dispatcher radioed back with the requested information.

{¶17} On cross-examination, Deputy Carpenter conceded that there were occasions in the past when Hyra alerted on a vehicle and no drugs were found, but he was unable to estimate the numbers of occasions when that situation had occurred. (*Id.* at 32, 50-51.) However, Deputy Carpenter immediately clarified the foregoing testimony, stating that "[he could] say for certain that every time [Hyra] indicates, there [were] or have been recently narcotics, drugs, in that vehicle or area that she is sniffing." (*Id.*)

{¶18} On redirect, Deputy Carpenter reaffirmed that after each and every one of Hyra's alerts, drugs were either found in the vehicle, or the occupants conceded that drugs had been in the vehicle but were removed prior to the sniff:

Defense asked if there's ever a time when [Hyra] would indicate and not -- drugs not being found. That answer is true, there are times. However, when times like that occur, I always ask the follow-up questions with the driver's [sic] or passengers; explain to them, hey, my K-9 is trained in X, Y, Z. Can you give me a reason why [Hyra] would indicate and me not find anything? Have you smoked marijuana before, had you let somebody borrow your car within 30 days, maybe smoked weed? And every single time, 100 percent, that has been true. So I can sit here and testify that my K-9 has never given a false positive, with that being said, of no drugs being found and no narcotics had ever being recently in that vehicle. Its either drugs being found or extremely recent [sic] of narcotics, drugs, marijuana what have you in that vehicle.

(*Id.* at 57).

**{¶19}** Hyra began at the rear of the vehicle and worked her way around the driver's side to the front of the car. When she reached the seam of the passenger-side door, Hyra began sniffing more intently, then snapped her head back toward the passenger side door, alerting Deputy Carpenter to the presence of drugs.

**{¶20}** Deputy Carpenter informed Moore of the alert and instructed him to exit the vehicle. Deputy Carpenter asked Moore if he had anything in his pockets that could injure Deputy Carpenter, and Moore admitted to having a capped syringe in his pocket. Deputy Carpenter felt the outline of the capped syringe during the subsequent pat down. Moore was handcuffed and seated in the police vehicle.

**{¶21}** Next, Deputy Carpenter asked Appellant to step out of the vehicle. With Appellant standing in front of Deputy Carpenter, he observed that Appellant's left, but not right, pant leg was tucked "very tightly" into his shoe. Deputy Carpenter testified that the tucked pant leg "kind of connected the dots and added everything up, from the beginning of the traffic stop with the furtive movements of [Appellant] going forward in his -- in [Appellant's] seat leaning towards that pant leg area, then coming right back up." (*Id.* at 27).

{¶22} Deputy Carpenter explained that he had previously witnessed vehicle occupants hide drugs in their groin area and then remove the contraband to another part of their body, unwittingly leaving their zipper undone in the process. He believed that Appellant had made such a transfer when he leaned forward at the beginning of the traffic stop. Deputy Carpenter untucked Appellant's pant leg as a part of the pat down, but found no drugs or weapons.

{¶23} Then, Deputy Carpenter instructed Appellant to remove his shoes. Deputy Carpenter conceded at the September 8th hearing that he was not searching for a weapon when he directed Appellant to remove his shoes. When defense counsel asked Deputy Carpenter if he had planned to search Appellant's shoes when he initiated the pat down search, he responded, "Only if I didn't find anything at the time." (9/25/17 Hrg., 16).

{¶24} Appellant removed his right and then his left shoe. Inside Appellant's left shoe, Deputy Carpenter found and removed a plastic baggie containing two other baggies, one containing a white-colored, rock-like substance, and the other a brown-colored material. A field test established that the white substance was cocaine. In addition to the drugs, Deputy Carpenter secured $341.00 in cash found in Appellant's pocket.

{¶25} After Appellant was placed in a cruiser, the Sheriff's deputies searched the automobile. Moore was searched after the search of the vehicle was completed. Deputy Carpenter explained that Moore was under arrest based on the capped needle in his pocket. Deputy Carpenter further explained that it was safer and more expeditious to secure Moore in the cruiser and search him after searching Appellant and the vehicle.

{¶26} At the conclusion of the suppression hearing on September 25th, counsel for the State conceded that Deputy Carpenter's search of Appellant's person exceeded the scope of a stop and frisk as defined by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), but argued that the existence of probable cause and exigent circumstances validated the warrantless search of his shoes. It is important to note that Appellant's convictions are predicated on the drugs found in his shoes, not the substances found in the vehicle.

{¶27} The motion to suppress was filed on September 6, 2017. The two-part hearing was conducted on September 8 and 25, 2017. The State's opposition brief was filed on October 18, 2017. Appellant's reply was filed on October 25, 2017.

**{¶28}** In the November 11, 2017 judgment entry, the trial court held that the canine sniff did not extend the time period necessary to accomplish the original purpose of the stop. In the alternative, the trial court opined that reasonable suspicion existed to extend the stop to conduct the canine sniff based on the totality of the circumstances. The trial court predicated reasonable suspicion on "[Appellant]'s bending over so that he disappeared from sight, his nervousness, sweating and trembling voice, his failure to look at the officer, his attempts at distraction and his unzipped pants." (11/3/17 J.E., p. 4). The trial court further held that probable cause existed for the warrantless search of Appellant's shoes based on the canine hit, citing Judge Abele's concurrence in *State v. Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 47.

**{¶29}** In *Debrossard*, the appellant was a passenger in a taxicab that was the subject of a canine sniff. Although the officer relied on a valid traffic violation to initiate the traffic stop, he was acting on a tip that Debrossard was carrying illegal drugs. The drug dog alerted on the passenger side of the taxicab where Debrossard was seated.

**{¶30}** At about the same time, the dispatcher responded that Debrossard had an expired concealed carry permit issued in Meigs County. When the officer asked Debrossard if he was armed, Debrossard admitted that he had a firearm and he began to reach into a black duffel bag at his side. Debrossard was immediately removed from the taxicab and handcuffed. According to testimony provided at a suppression hearing, Debrossard consented to a full search of his person, which revealed two bags of pills. A few days later, the ongoing investigation revealed that Debrossard had a valid concealed carry permit issued by Gallia County at the time of the arrest.

**{¶31}** Because Debrossard's consent was given after he had been forcibly removed from the taxi, handcuffed, and his duffel bag had been confiscated, the Fourth District concluded that his consent was involuntary, and the search of his person was constitutionally infirm. In his concurring opinion, Judge Abele observed that passengers frequently serve as drug couriers and conceal drugs on their persons in order to escape detection. When probable cause exists to search a motor vehicle for drugs or contraband, Judge Abele opined that it is not unreasonable for the authorities to have the ability to expand the search of the vehicle's passengers beyond the scope of a *Terry* pat-down frisk for weapons. *Id.* at ¶ 46 (J. Abele, concurring).

**LAW**

**{¶32}** The Fourth Amendment imposes a reasonableness standard on the exercise of discretion by government officials. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 12, citing *Delaware v. Prouse,* 440 U.S. 648, 653-654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1990). The permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Id.* citing *Prouse* at 654, 99 S.Ct. 1391, 59 L.Ed.2d 660.

**{¶33}** The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Ohio Constitution, Article I, Section 14, is nearly identical to its federal counterpart. *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998).

**{¶34}** For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). This requires a two-step analysis: First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. *Mapp v. Ohio*, 367 U.S. 643, 657, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**{¶35}** Probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Id.* at 235. "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 370-71, 124 S.Ct. 795

(2003). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt, * * * and that the belief of guilt must be particularized with respect to the person to be searched or seized * * *." *Id.*, citing *Ybarra v. Illinois*, 444 U.S. 85, 91,100 S.Ct. 338 (1979).

**{¶36}** Appellant concedes that Deputy Carpenter had probable cause for the initial traffic stop. (Appellant's Brf., pp. 7-8). Ordinary inquiries incident to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, -- U.S. --, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492 (2015). During a valid traffic stop, "any questioning which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention." *State v. Chagaris*, 107 Ohio App.3d 551, 556-557, 669 N.E.2d 92 (1995)(9th Dist.), *see also*, *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984).

**{¶37}** During a valid traffic stop, officers may order the occupants of a vehicle out of the vehicle pending completion of the stop without violating the Fourth Amendment. *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others. *State v. Dunlap*, 7th Dist. Columbiana No. 12 CO 31, 2013-Ohio-5637, ¶ 34, citing *State v. Evans*, 67 Ohio St.3d 405, 414, 618 N.E.2d 162 (1993). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Evans* at 422, citing *Terry* at 24, 88 S.Ct. 1868.

**{¶38}** It is well settled that the use of a trained drug-detection dog during a lawful traffic stop generally does not trigger Fourth Amendment protection. *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). A drug-detection dog may sniff around the exterior of a defendant's vehicle during a lawful traffic stop in absence of a reasonable suspicion of drug-related activity. *Id.* at 409.

**{¶39}** However, a traffic stop may not be extended in order to conduct a dog sniff, absent reasonable suspicion. *Rodriguez, supra*, 1616-1617. In *Rodriguez*, the drug dog

was present in the cruiser, but, Rodriguez refused to allow the sniff, so the officer radioed for additional officers prior to conducting the canine sniff. Because the officer in *Rodriguez* had completed the mission of the traffic stop, collecting the pertinent information and issuing the written warning, the United States Supreme Court concluded that the officer could not detain Rodriguez for the dog sniff, absent reasonable suspicion that he had been involved in other illegal activity. *Id.* at 1616-1617.

**{¶40}** The Court in *Rodriguez* emphasized that "the critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop." *Id.* at 1616. Ohio courts have validated stops of varying lengths that are largely fact specific, and, as a consequence, have yielded no bright line temporal rule. *See* e.g., *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282 (nine minutes, but prior to the completion of background check); *State v. Bell*, 12th Dist. Preble No. CA2001-06-009, 2002-Ohio-561 (fourteen minutes, but prior to the response from dispatch); *but see State v. Elliott*, 7th Dist. Mahoning No. 11 MA 182, 2012-Ohio-3350, ¶ 25 (30-minute detention is unreasonable where drug dog is unavailable so officer conducts field-sobriety test in the interim).

**{¶41}** When a trained narcotics dog gives an alert that illegal drugs are present, an officer has probable cause to search the vehicle. *Florida v. Harris*, 568 U.S. 237, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013). The relevant question is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* at 1058.

**{¶42}** We have recognized that when a drug-sniffing dog indicates an odor of drugs, officers have probable cause to believe that drugs are present. *State v. Barnett*, 7th Dist. Jefferson No. 06-JE-23, 2008-Ohio-1546, ¶ 37 citing *State v. Beavers*, 8th Dist. Cuyahoga No. 88513, 2007-Ohio-2915, at ¶ 13. When a trained narcotics dog gives an alert that illegal drugs are present, an officer has probable cause to search a vehicle. *State v. Truax*, 7th Dist. Belmont No. 06 BE 66, 2007-Ohio-4993, ¶ 10, citing *State v. Lopez*, 166 Ohio App.3d 337, 2006-Ohio-2091, 850 N.E.2d 781, ¶ 22.

**{¶43}** However, the standard for searching an occupant in a vehicle beyond a pat-down search is significantly more demanding than the standard for searching the vehicle

itself. In *United States v. Di Re*, 332 U.S. 581, 587, 68 S.Ct. 222, 92 L.Ed. 210 (1948), the United States Supreme Court held that simply being a passenger in a car subject to a lawful search is not enough to justify a complete search of a person. The *Di Re* Court reasoned that "[t]he forefathers, after consulting the lessons of history, designed our Constitution to place obstacles in the way of too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment." *Di Re*, *supra*, at 595.

**{¶44}** Fifty years later, in a holding allowing police officers to search a passenger's belongings found in a vehicle, the United States Supreme Court distinguished the search of belongings in a vehicle from a search of an occupant, based on "the unique, significantly heightened protection afforded against searches of one's person." *Wyoming v. Houghton*, 526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). The holding in *Houghton* was based on the longstanding *Di Re* rule that probable cause to search a car does not mean that "a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *Di Re* at 587. Likewise, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra*, 444 U.S. at 91.

## ANALYSIS

**{¶45}** Appellant advances three assignments of error:

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE TRAFFIC STOP WAS NOT UNLAWFULLY EXTENDED.**

**{¶46}** Appellant contends that the canine sniff unlawfully extended the traffic stop. Although he concedes that the canine sniff was conducted roughly eight minutes into the traffic stop, Appellant argues that Deputy Carpenter "conveniently" testified that that he was uncertain whether the canine sniff occurred before or after his dispatcher

radioed back the license check. (Appellant's Br., p. 4). He further argues that there was no reasonable suspicion of criminal activity to validly continue the encounter.

{¶47} In *Rodriguez, supra*, the defendant was stopped for a traffic violation. Seven to eight minutes after the officer issued a written warning, a drug-detecting dog circled the vehicle and alerted to the presence of drugs, which led to the recovery of illegal drugs in the car. *Id.* at 1610. Rodriguez moved to suppress the evidence and the trial court denied the motion, concluding that "the seven or eight minute delay was an acceptable 'de minimis intrusion on Rodriguez's personal liberty.' " *Id.* at 1611. The Eighth Circuit affirmed, finding the extension of the stop permissible as a de minimis intrusion. *Id.*

{¶48} The Supreme Court considered whether police, absent reasonable suspicion, could extend an otherwise-completed traffic stop in order to conduct a dog sniff. *Id.* at 1614. The Court held that the stop may not be prolonged beyond the time reasonably required to complete the "mission" of the stop, which includes issuing the ticket or warning and other ordinary inquiries incident to the traffic stop and related to officer safety such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 1615.

{¶49} Although Deputy Carpenter's body camera footage establishes that the dispatcher had provided the information requested by Deputy Carpenter prior to the canine sniff, it is clear from the record that Deputy Carpenter had not yet issued a written warning. In other words, the facts in this case do not establish "an otherwise completed traffic stop." *Id.* at 1610. Moreover, in *Batchili, supra*, the trooper testified that the time required to issue a warning was roughly ten minutes and the time required to issue a citation was anywhere from ten to twenty minutes. *Batchili* at ¶ 13. In *Elliot, supra*, the officer testified that ten minutes typically elapsed during the issuance of a citation. *Elliot* at ¶ 25.

{¶50} Although Deputy Carpenter did not provide any testimony regarding the average amount of time required to issue a warning or a traffic citation, eight minutes is not unreasonable in light of existing case law. Even though the Ohio Supreme Court in *Batchilli* and the Twelfth District in *Bell* predicated their conclusion regarding

reasonableness on the fact that the officers in those cases had not received the information requested by dispatch prior to conducting the canine sniff, we find that the mission of the stop in this case was not complete, insofar as Deputy Carpenter had not issued a warning or traffic citation. Accordingly, we find that Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND PROBABLE CAUSE EXISTED TO CONDUCT A WARRANTLESS SEARCH OF THE OCCUPANTS OF THE VEHICLE BASED ON A DRUG DOG HIT.**

{¶51} Although Appellant concedes that the pat-down search conducted after he exited the vehicle was valid, he challenges the search of his shoes. He argues that the canine hit did not establish probable cause to execute a full search. Every Ohio intermediate court to consider the issue has held that a canine hit on a vehicle is, in and of itself, insufficient to establish probable cause for the search or arrest of the occupants of a vehicle, but, instead, one factor in the totality of the circumstances test applied to determine the existence of probable cause.

{¶52} For instance, in *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004-Ohio-7280, the Fourth District validated the warrantless search of a passenger in a vehicle, concluding that a dog's alert on the vehicle in which the appellant was an occupant, although not dispositive, is a relevant factor in the probable cause analysis. *Id.* at ¶ 43. In addition to the canine alert, the Fourth District relied on Jones' furtive movements in the back seat, his known history of drug abuse, and his attempts to hinder the pat-down search. *Id.* at ¶ 41. In *State v. Kelley*, 4th Dist. Ross No. 10CA3182, 2011-Ohio-3545, the Fourth District observed that the *Jones* decision was consistent with the Ohio Supreme Court's holding in *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804. In *Moore*, the Ohio Supreme Court validated a warrantless search where the police officer smelled the odor of marijuana. The Fourth District in *Kelley* reasoned that "a drug dog's alert on a vehicle is at least similar, and maybe more precise, to a trained officer's smell of marijuana." *Id.*, at fn. 3.

**{¶53}** Likewise, in *State v. Young*, 12th Dist. Warren No. CA2011-06-066, 2012-Ohio-3131, ¶ 22-23, the Twelfth District held that Young's arrest was supported by probable cause where officers did not rely solely on the canine alert on the vehicle in which Young was an occupant. The Twelfth District cited facts particularized to Young, including Young's presence in an area known for drug activity, his involvement in a transaction in a minivan involving a book bag, and the fact that he was in the company of a known drug dealer. *Id.* at ¶ 23.

**{¶54}** The Ninth and Eleventh Districts have applied the same rule but with the opposite result. In *State v. Kay*, 9th Dist. Wayne No. 09CA0018, 2009-Ohio-4801, the police officer followed a vehicle departing from a known drug house. After the vehicle made an improper turn, the officer initiated a traffic stop and requested a canine unit. The dog subsequently alerted to the vehicle. The car and its driver were searched with negative results. The passenger was then searched and the officer found a crack pipe in his pocket. The trial court granted the passenger's motion to suppress.

**{¶55}** On appeal, the state argued that the logical conclusion based on the facts was that, if the drugs were not found in the vehicle or on the driver's person, they must be on the passenger. The Ninth District rejected what it characterized as a "process-of-elimination argument," holding that the officers did not have probable cause to search the driver or his passenger. *Id.* at ¶ 15. In affirming the suppression of the evidence, the Ninth District observed:

> "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be."

*Id.*, quoting *Ybarra*, 444 U.S. at 91.

**{¶56}** In *State v. Robinson*, 9th Dist. Wayne No. 10CA0022, 2012-Ohio-2428, after a canine alert at the driver's side door, the officer asked Robinson to exit the vehicle and handcuffed him to prevent him from attempting to flee or to destroy contraband.

Robinson denied having any drugs. The officer began a pat-down search of Robinson while the canine officer searched the vehicle. The officer discovered a large sum of money in Robinson's pocket. Shortly after the officer discovered the money, the canine officer discovered loose marijuana on the floor of the vehicle. The officer requested that Robinson sit on the bumper of the cruiser and remove his shoes, and Robinson complied. After two bags of cocaine were found in Robinson's sock, Robinson was arrested. *Id.* at ¶ 7.

{¶57} The Ninth District rejected the trial court's reliance on *U.S. v. Anchondo,* 156 F.3d 1043 (10th Cir.1998), in which the Tenth Circuit Court of Appeals held that a drug dog's alert on a vehicle alone establishes probable cause to arrest the occupants. *Id.* at 1045. The *Anchondo* Court further held that "[e]ven if the subsequent fruitless search of the car diminished the probability of contraband being in the car, it increased the chances that whatever the dog had alerted to was on the defendants' bodies." *Id.* The *Robinson* Court disagreed, finding that "in regard to the arrest or full search of the occupant of a vehicle, the canine alert alone does not provide the requisite level of probable cause." *Robinson* ¶ 10.

{¶58} In *State v. McCorvey*, 11th Dist. Ashtabula No.2010-A-0038, 2011-Ohio-3627, the Eleventh District held that a canine's alert on a vehicle and the subsequent fruitless search of the vehicle did not independently provide probable cause to search the driver. The Eleventh District held that a canine alert to McCorvey's automobile and its subsequent fruitless search were merely pertinent factors in the probable-cause inquiry, which did not provide probable cause to search McCorvey's jacket. *Id.* at ¶ 35. The Eleventh District concluded that the canine alert plus the additional evidence – McCorvey's history of drug abuse, as well as an anonymous, but ultimately incorrect tip that she was concealing drugs in her bra – taken in their totality, were insufficient to establish probable cause.

{¶59} Turning to the facts in this case, there is no question that Hyra's alert established probable cause to search the automobile. In its response to the motion to suppress before the trial court, the State advocated the adoption of the bright line rule announced by the Tenth Circuit in *Anchondo*, *supra*, that a canine alert on a vehicle, like

the odor of burning marijuana in *Moore*, *supra*, establishes probable cause for a warrantless search of both the vehicle and its occupants.

{¶60} We choose instead to adopt the sound reasoning of the other Ohio appellate districts that have considered this issue, and we hold that a canine alert alone is insufficient to establish probable cause to conduct a full search of the occupants in a vehicle, but may be considered as one factor in the probable cause determination. Further, upon de novo review, *see Ornelas, supra*, and having considered the totality of the circumstances leading up to the search of Appellant's shoes in this case, we find that probable cause did not exist for the search.

{¶61} Deputy Carpenter claimed that the occupants' behavior immediately raised suspicion of criminal activity. At the September 8th hearing, he testified that Appellant stared straight ahead while Deputy Carpenter talked with Moore, as if Appellant did not want to look at Deputy Carpenter, and that Appellant was anxious and sweaty during the stop.

{¶62} Of course, some degree of nervousness and anxiety during a traffic stop is commonplace, as is nervous conversation while waiting for information from dispatch. Moreover, after viewing the body camera footage at the September 25th hearing, Deputy Carpenter conceded that Appellant was looking at his phone, rather than staring straight ahead, while Deputy Carpenter talked with Moore. Of equal import, Deputy Carpenter conceded at the September 25th hearing that he, too, was sweating during the early-July encounter.

{¶63} Although the canine alert established probable cause to search the automobile, we give little weight to the alert with respect to the search of Appellant's shoes. Deputy Carpenter searched Appellant before he searched the automobile. Therefore, the canine alert could have indicated that there were drugs in the vehicle, on the driver's person, on the passenger's person, or, as Deputy Carpenter conceded at the hearing, drugs had been in the vehicle at some time in the very recent past but had been removed.

{¶64} Finally, Deputy Carpenter testified that his experience and training led him to conclude that Appellant's movements toward the floorboard when the stop was initiated, considered with his unzipped pants and his tucked pant leg, were evidence that

Case No. 18 BE 0004

Appellant was concealing drugs. Specifically, he testified, "I have seen in recent past [sic] where occupants have had either a zipper undone, or where they have maybe been hiding something illegal in their groin area, and then they remove it and place it in another location, or another part of their body." (9/8/17 Hrg. Tr. 60).

**{¶65}** Appellant's unzipped pants and tucked pant leg, in light of Deputy's Carpenter's testimony and the canine alert, raised suspicion that Appellant may have been engaged in criminal activity. However, we find that these facts would not lead a reasonably prudent person to conclude that Appellant's shoes probably contained evidence of a crime. *Gates*, *supra*, at 246. While we agree with the parties that the pat-down search for weapons was valid, we find that the facts, considered in their totality, did not establish probable cause to conduct a full search of Appellant's person.

**{¶66}** In summary, based on the facts in the record, and in light of "the unique, significantly heightened protection afforded against searches of one's person" *Houghton*, *supra*, at 301, we find that probable cause did not exist for the full search of Appellant's person. The facts and circumstances within Deputy Carpenter's knowledge prior to the search were sufficient to raise suspicion of Appellant's guilt, but insufficient to establish reasonable belief of Appellant's guilt. As a consequence, we find that Appellant's second assignment of error is well-taken, and reverse the judgment entry of the trial court denying Appellant's motion to suppress.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND PROBABLE CAUSE EXISTED TO CONDUCT A WARRANTLESS SEARCH OF DEFENDANT'S PERSON BASED ON THE EXIGENT CIRCUMSTANCES EXCEPTION.**

**{¶67}** Because we have found that the search of Appellant's shoes violated the Fourth Amendment, we need not consider Appellant's assertion that the warrantless nature of the search was likewise constitutionally infirm. Therefore, we find that Appellant's third assignment of error is moot.

**CONCLUSION**

**{¶68}** In summary, we find that the canine sniff did not extend the traffic stop. Based on the totality of the circumstances, including the canine alert on the automobile, we find that Deputy Carpenter did not have probable cause to search Appellant's shoes. Accordingly, the judgment entry denying the motion to suppress the drugs found as a result of the illegal search is reversed and the case is remanded to the trial court for further proceedings.

Waite, P. J., concurs.

Robb, J., dissents with attached dissenting opinion.

Robb, J., dissenting opinion.

**{¶69}** As to Appellant's first assignment of error, I concur in the conclusion that the canine sniff of the vehicle was valid. The canine unit officer initiated a lawful traffic stop for failing to illuminate the license plate, began gathering information, noticed nervousness and the open zipper on the passenger's jeans, waited for the driver to continue searching for an insurance card after hearing from dispatch, and then noticed another issue with the license plate (a frame concealed the county and the expiration sticker). The canine sniff, lasting mere seconds, occurred within eight minutes of the stop, and the officer had not yet issued a warning or a ticket. The traffic stop was not unreasonably extended by the canine sniff of the vehicle.

**{¶70}** However, I respectfully dissent to the portion of the decision finding a lack of probable cause to conduct a warrantless search of the passenger. I would find the probable cause plus exigent circumstances exception to the warrant requirement applied. I would therefore overrule Appellant's second and third assignments of error and affirm the trial court's judgment.

**{¶71}** In reviewing for probable cause to conduct a warrantless search of a vehicle's occupants after a canine alert for drugs, I agree the test involves a consideration of the totality of the circumstances. In *Moore*, the Ohio Supreme Court ruled the smell of burnt marijuana by a person qualified to recognize the odor is sufficient, in itself, to establish probable cause to conduct a search of the vehicle and the driver. *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804 (2000) (where the driver was searched and drug paraphernalia was found on his person before the search of the vehicle). The *Moore* Court concluded the smell alone provided the officer probable cause that drugs would be found on the driver's person. In so holding, the Court specified that *it was not rejecting the totality of the circumstances analysis. Id.* at 50 (but finding the particular circumstance alone met the test). *See also Florida v. Harris*, 568 U.S. 237, 244, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013) (in allowing a search of a vehicle based on a canine alert, the Court noted that in evaluating probable cause "we have consistently looked to the totality of the circumstances").

**{¶72}** I also agree the canine alert established probable cause to search the vehicle. The search of the vehicle in *Moore* based on the officer's observation of smell

was permitted under the automobile exception to the warrant requirement. *Id.* at 51, citing, e.g., *Maryland v. Dyson*, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (if there is probable cause to search a vehicle, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant was not actually obtained; the automobile exception does not have a separate exigency requirement and police can search a car that is readily mobile where probable cause exists to believe it contains contraband). The search of the vehicle in *Harris* based on the canine's alert was permissible where the court could reasonably find the canine reliable. *Harris*, 568 U.S. at 247-250 (instructing the trial court to weigh the competing evidence on the reliability of the particular canine). Containers that could contain the substance, including the passenger's belongings, can be searched where there is probable cause to search the vehicle for a substance. *Wyoming v. Houghton*, 526 U.S. 295, 301-307, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (passenger's purse).

**{¶73}** The *Moore* Court applied the probable cause plus exigent circumstances exception to the driver after finding probable cause to search the driver due to the officer's smell of burnt marijuana. Appellant notes the driver in *Moore* was alone. The majority opinion here finds no probable cause to believe Appellant had drugs on his person. Under the totality of the circumstances, I disagree.

**{¶74}** I acknowledge the emphasis in *Di Re* and the notation in *Houghton* that there is more protection for the passenger's person than there is for the passenger's belongings. However, I am not proposing the automatic search of a passenger based on the canine alert; as already stated, I agree the totality of the circumstances test applies. I also note that *Houghton* was a case about the search of belongings in a car. *See, e.g., Houghton*, 526 U.S. at 303 (in allowing the search of the passenger's purse due to its mere presence in the car and its ability to contain the object for which the officer's had probable cause, the Court's dicta distinguished the protection for belongings from the "heightened protections afforded against searches of one's person"). And, Appellant's situation is distinguishable from the *Di Re* case where United States Supreme Court found probable cause to search the front-seat passenger in a vehicle does not exist *merely* because he was in the car with the confidential information and the driver whom the police had probable cause to believe possessed illegal gasoline ration coupons. *United States*

*v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 223, 92 L.Ed. 210 (1948) (rejecting the government's argument that the passenger can be searched as an incident of the automobile search). The Court's decision in *Di Re* focused on the fact that the officers "had no information implicating Di Re and no information pointing to possession of any coupons, unless his presence in the car warranted that inference" and concluded the defendant's "mere presence in a suspected car" did not allow him to be searched as an incident of the search of the automobile. *Id.* at 592.

{¶75} Here, the search of the passenger was not based on his mere presence in a suspected car. The officer testified that part of his probable cause determination was based on initially witnessing the passenger bend down toward his shoes as the traffic stop was being initiated. This is one relevant factor. *See, e.g., State v. Kessler*, 53 Ohio St.2d 204, 209, 373 N.E.2d 1252 (1978) ("where a furtive movement has been made by occupants of a vehicle in response to the approach of police officers, the addition of other factors may give rise to a finding of probable cause to search the vehicle"). Possibly providing additional time for the passenger to hide contraband, the driver did not immediately pull over but turned at the stop sign and then stopped after 30 feet. It was also 2:00 a.m. on July 4. Furthermore, upon approaching the vehicle, the officer noticed the zipper of the passenger's jeans was open. Both the driver and the passenger seemed nervous to the officer. He described the passenger as overly nervous, with a trembling voice, shaking hands, and sweating forehead. The officer also found it suspicious that the passenger showed him photographs on his social media page as if he wished to prove to the officer he worked in a certain field. The passenger's phone scrolling and display of photographs to the officer can be seen as an attempt to distract the officer who was collecting information in the dark from the passenger side of the vehicle.

{¶76} The canine alert on the vehicle is another factor relating to not only the vehicle as discussed above but to its occupants. *See Harris*, 568 U.S. 237 (search vehicle based on reliable canine alert); *Moore*, 90 Ohio St.3d 47 (search driver based on officer's smell of burnt marijuana). Moreover, the canine alerted to drugs on the passenger side of the vehicle after beginning at the trunk and passing by the driver's side. In addition, before the passenger was searched, the driver admitted to having a capped needle in his pocket. When the passenger alighted from the vehicle, the officer noticed his left pant

leg was tightly tucked into his shoe; the other pant leg was not. (In addition to the ability to remove the driver and passenger to investigate the situation, they would also have to be removed to conduct the search of the vehicle which was admittedly proper.) The officer, who was trained in drug interdiction, testified about the significance of the open zipper at the groin area of the pants and the tucking of one leg of the pants into the shoe. In his experience, illegal items have been concealed in the groin area and moved to another location. He thought it probable the passenger removed drugs from his groin area and put them in his shoe without rezipping his pants. The earlier viewing of passenger's movement toward the floor links the various suspicious circumstances.

**{¶77}** The evidence resulting in the various "probabilities" to be considered was "particularized with respect to the person to be searched" and was not merely related to a canine alert on a vehicle. *See generally Maryland v. Pringle*, 540 U.S. 366, 371-373, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (probable cause as to front-seat passenger where drugs found in backseat armrest near back-seat passenger and rolled up money in glove compartment as reasonable to infer all three exercised dominion and control over drugs, noting the small environment of a car as compared to a tavern). Based upon the totality of the circumstances, I believe there were reasonable grounds to believe the passenger had drugs on his person.

**{¶78}** Finally, on the topic of exigency, the *Moore* Court found there were compelling reasons to justify the search of the driver without waiting for a warrant, noting narcotics are easily hidden and destroyed and the case involved a roadside stop with a mobile automobile. *Moore*, 90 Ohio St. 3d at 51-53 (also noting the officer was alone). On appeal, Appellant contends there was no evidence of an imminent danger the drugs would be moved if the officer left the scene and attempted to obtain a warrant. (The majority opinion does not address this argument within Appellant's third assignment of error as it found probable cause lacking.)

**{¶79}** Although the officer was not alone, this was a roadside encounter occurring at 2:00 a.m. on July 4, and the passenger (who already seemed to be hiding something in his shoe) was aware of the canine alert. Compelling reasons to remove the passenger's shoes rather than awaiting a warrant to search him were present. In support, I note that after finding probable cause to search the passenger based on the canine alert

Case No. 18 BE 0004

on the vehicle and other circumstances about the passenger, the Fourth District found exigent circumstances noting: "Narcotics in an individual's possession are easily destroyed and [the officers] would have had to allow [the passenger] to leave the scene or detained him for an unreasonable length of time in order to obtain a warrant to search his person at 1:00 in the morning." *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004-Ohio-7280, ¶ 42. *See also In re A.T.*, 1st Dist. Hamilton No. C-170467, 2018-Ohio-2899, ¶ 16 (where a trooper smelled raw marijuana and two more officers arrived, search of passenger was justified by exigent circumstances); *State v. Kelley*, 4th Dist. Ross No. 10CA3182, 2011-Ohio-3545, ¶ 30 (where dog alerted to passenger side and confidential informant reported truck would have crack cocaine, the court found the search of the passenger was justified to preserve evidence as the officers could reasonably infer he was attempting to hide drugs and "[i]f the officer had not immediately searched him, the danger of further attempts at detection or destruction of evidence existed.").

{¶80} I would also note the state argued exigency in a brief presented after the suppression hearing, but the reply of the defense did not contest this argument, instead alleging lack of probable cause to believe drugs would be found on Appellant's person and noting *Moore* applied to a driver where there were no other suspects present in the vehicle. (Nor did the suppression motion mention exigency, stating the search went beyond a frisk and the state had the burden to show an exception to the warrant requirement.) In sum, I find no issue with the officer asking the passenger to remove his shoes under the totality of the circumstances in this case. I would thus affirm the trial court's decision denying Appellant's motion to suppress.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**