[Cite as *State v. Brown*, 2021-Ohio-2853.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SPENCER BROWN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MA 0136**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 18-CR-1188

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor*, and *Atty. Ralph M. Rivera*, Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Louis DeFabio,* 4822 Market Street, Youngstown, Ohio 44512, for Defendant-Appellant.

Dated: August 12, 2021

---

**D'Apolito, J.**

{¶1} Appellant, Spencer Brown, appeals the judgment of the Mahoning County Court of Common Pleas denying his motion to suppress following a hearing. Appellant pleaded no contest and was sentenced to seven years in prison for possession of cocaine, having weapons while under disability, possession of heroin, improperly handling firearms in a motor vehicle, and carrying concealed weapons. On appeal, Appellant argues the trial court erred in denying his motion to suppress. Appellant asserts that officers did not have a reasonable, articulable suspicion that he was engaged or about to be engaged in criminal activity. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} On November 8, 2018, officers from Youngstown Police Department ("YPD") were dispatched to 702 Pasadena in Youngstown, Mahoning County, Ohio, an asserted high crime area. YPD detective division received an anonymous tip that some individuals were at 702 Pasadena removing property from the residence. Officers were dispatched in reference to a disturbance.

{¶3} Upon arrival, officers observed Appellant's vehicle, a late model Oldsmobile, parked half on the roadway and half on the devil strip in violation of Youngstown Codified Ordinance 351.03. Appellant was seated in the driver's seat. In the backseat was a television. A door at 702 Pasadena appeared to have been kicked in, damaged, contained a small hole, and was partially open. Appellant acknowledged there was a small hole in the door but claimed it could not be seen through the screen door from the street.

{¶4} Upon questioning, Appellant indicated he lived at 702 Pasadena. However, Appellant could not produce any documentation verifying that location as his address at that time. The officers then asked Appellant to step out of his vehicle and they conducted a *Terry* pat-down. The officers discovered a semi-automatic handgun in the pocket of Appellant's hooded sweatshirt. Appellant was placed under arrest. A search incident to arrest also revealed cocaine, heroin, and a digital electronic scale.

Case No. 19 MA 0136

{¶5}   On January 3, 2019, Appellant was indicted by the Mahoning County Grand Jury on five counts: count one, possession of cocaine, a felony of the first degree, in violation of R.C. 2925.11(A) and (C)(4)(e), with a forfeiture specification in violation of R.C. 2941.1417; count two, having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2), (3), and (B); count three, possession of heroin, a felony of the fourth degree, in violation of R.C. 2925.11(A) and (C)(6)(b), with a forfeiture specification in violation of R.C. 2941.1417; count four, improperly handling firearms in a motor vehicle, a felony of the fourth degree, in violation of R.C. 2923.16(B); and count five, carrying concealed weapons, a felony of the fourth degree, in violation of R.C. 2923.12(A)(2) and (F).   Appellant retained counsel and pleaded not guilty at his arraignment.

{¶6}   On April 16, 2019, Appellant filed a motion to suppress.  Appellant submitted that the stop, detention, and search and seizure violated his constitutional rights. Appellee, the State of Ohio, filed a response in opposition on May 3, 2019.  The State indicated that Appellant's vehicle was illegally parked, and that the pat-down and subsequent seizure of evidence did not violate the Fourth Amendment.  A hearing was held on July 3, 2019.

{¶7}   Sergeant Nicholas Bailey with YPD testified for the State that he was a K-9 handler assigned to the Patrol Division on the date at issue, November 8, 2018. (7/3/2019 Suppression Hearing T.p., p. 6).  Sergeant Bailey responded to a call in which two other officers were dispatched to 702 Pasadena, a "high crime area," where the night before, three people were murdered outside of that location.  (*Id.* at 8, 15, 20).  Officers were called because someone was removing items from the residence.  (*Id.* at 8, 49).

{¶8}   When Sergeant Bailey arrived in his marked cruiser, he observed an Oldsmobile illegally parked half on the roadway and half on the devil strip in violation of Youngstown Codified Ordinance 351.03.  (*Id.* at 9-10).  Sergeant Bailey activated his overhead lights, advised radio dispatch, and parked behind the car.  (*Id.* at 10).  Sergeant Bailey approached the vehicle.  (*Id.*)  He observed Appellant sitting in the driver's seat, a television in the backseat, and a puppy in a cage on the passenger's floorboard.  (*Id.*) Sergeant Bailey observed that a door to the residence was kicked in and the home appeared to have been burglarized.  (*Id.*)  Appellant said he resided at the house but

Case No. 19 MA 0136

could not provide any sort of proof of residency at that time.[1]  (*Id.* at 11).

{¶9}  Officers Wallace and Martini with YPD arrived at the scene.  (*Id.* at 12). Sergeant Bailey told the officers that there was a television in Appellant's backseat, that it looked like a door to the residence was kicked in, and that this may be a burglary.  (*Id.*) Appellant was asked to step out of his vehicle due to the possibility that he could be armed, dangerous, and a burglar.  (*Id.* at 12-13).  Appellant stepped out of his vehicle and complied with a pat-down of his person.  (*Id.* at 13).  It immediately became apparent to Sergeant Bailey that Appellant had a semi-automatic handgun in the front pocket of his hooded sweatshirt.  (*Id.*)  Sergeant Bailey informed Officer Wallace in code that he felt a weapon on Appellant.  (*Id.*)  Sergeant Bailey recovered the firearm from Appellant's pocket, cuffed him from behind, and placed him under arrest.  (*Id.* at 14).

{¶10}  Sergeant Bailey and Officer Wallace then conducted a search incident to arrest.  (*Id.*)  They found a bag of cocaine and around $714 in Appellant's front pants pocket.  (*Id.*)  Also recovered from Appellant was a bag that contained cocaine and heroin as well as a digital electronic scale.  (*Id.* at 15).

{¶11}  Officer George Wallace, Jr. was called to testify for the defense.  Officer Wallace was on patrol duty on November 8, 2018.  (*Id.* at 52).  He was dispatched to 702 Pasadena in reference to a possible burglary in progress.  (*Id.* at 53).  Upon his arrival, he observed Appellant's vehicle illegally parked halfway up on the devil strip in front of the residence.  (*Id.* at 53, 60).  Officer Wallace provided assistance to Sergeant Bailey, who was speaking with Appellant.  (*Id.* at 54).  Officer Wallace observed a television in the backseat of Appellant's vehicle.  (*Id.* at 55).  Appellant said he lived at the residence and that some of his family members also stayed there.  (*Id.*)  After a minute or so, Officer Martini arrived.  (*Id.* at 56).  Officer Wallace said that dispatch had sent a "Signal 8" for an investigation rather than a "Signal 1 or Signal 3" for a burglary.  (*Id.* at 58-59).  He said the door that appeared to be kicked in and damaged, was also slightly open.  (*Id.* at 61-62).

{¶12}  On cross-examination, Officer Wallace testified that the pat-down search

---

[1] On cross-examination, Sergeant Bailey indicated that Appellant's mother and landlord subsequently confirmed that 702 Pasadena was Appellant's residence.  (*Id.* at 44).  On re-direct examination, Sergeant Bailey stated that when he approached Appellant and asked for his license, the ID that Appellant produced did not list 702 Pasadena as his home address.  (*Id.* at 46).

Case No. 19 MA 0136

revealed a firearm on Appellant. (*Id.* at 64). Cocaine and heroin were also discovered on Appellant's person. (*Id.* at 65). The prosecutor asked Officer Wallace, "So just because something is an investigation doesn't mean you can't arrest somebody when you get there?" (*Id.* at 65-66). Officer Wallace replied, "Yes; and, also, depending on how the call is given out. I don't really rely upon the call takers to give me the correct information or give me the right signals for the calls." (*Id.* at 66).

{¶13} On re-direct examination, Officer Wallace said he did not know how long the door to the residence had been damaged. (*Id.* at 67-68).

{¶14} Appellant testified that on November 8, 2018, he had been living at 702 Pasadena for about one month. (*Id.* at 69). Appellant's brother and his friend also lived there. (*Id.*) Appellant stated there was a hole in a door but said that it was not visible from the street. (*Id.* at 70-71). Appellant indicated both the door and screen door were closed and locked. (*Id.* at 71). Appellant acknowledged that he was parked on the devil strip when the officers arrived. (*Id.* at 72). Appellant said he was sitting in his car FaceTiming his mother with his cell phone and keys in his hands. (*Id.*) Appellant gave Sergeant Bailey his ID and told him he lived at the residence. (*Id.* at 73).

{¶15} On cross-examination, Appellant stated there was a television in his backseat and a hole in a door to the residence. (*Id.* at 76-77). Appellant said he did not walk around with Sergeant Bailey and did not know what the officer actually saw. (*Id.* at 77).

{¶16} On August 28, 2019, the trial court denied Appellant's motion to suppress. Specifically, the court referenced and considered the stop and the traffic violation; determined that the officers had a reasonable suspicion of criminal activity (burglary) supported by articulable facts to detain Appellant for limited questioning; to ask Appellant to step out of the vehicle; and to pat him down for officers' safety.

{¶17} On November 4, 2019, Appellant withdrew his former not guilty plea and entered a plea of no contest to the charges as contained in the indictment. The trial court accepted Appellant's no contest plea after finding it was made in a knowing, voluntary, and intelligent manner pursuant to Crim.R. 11. The court sentenced Appellant to a total term of seven years in prison, with 356 days of credit. The court further notified Appellant that post-release control is mandatory for a period of five years on count one, and may

be imposed for a period of three years on counts two and three.

{¶18}  Appellant filed a timely appeal and raises one assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS AS THE POLICE OFFICERS FAILED TO HAVE A REASONABLE AND ARTICULABLE SUSPICION THAT APPELLANT WAS ENGAGED OR ABOUT TO BE ENGAGED IN CRIMINAL ACTIVITY.**

{¶19}  In his sole assignment of error, Appellant argues the trial court erred in denying his motion to suppress.  Specifically, Appellant alleges that the officers' observations of a hole in a door to the residence coupled with the presence of a television in the backseat of his vehicle did not constitute a reasonable, articulable suspicion that he was engaged in, or about to be engaged in, criminal activity justifying the stop and search.

Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). Such a standard of review is appropriate as, "(i)n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice*, 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist.1998). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Id.*

*State v. Martin*, 7th Dist. Columbiana No. 18 CO 0033, 2020-Ohio-3579, ¶ 45.

**{¶20}** The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Fourth Amendment to the United States Constitution; *accord* Ohio Constitution, Article I, Section 14.

> Standing alone, an anonymous tip does not usually demonstrate the informant's basis of knowledge or veracity to justify an investigative stop. *State v. Anderson*, 11th Dist. Geauga No. 2003-G-2540, 2004-Ohio-3192, ¶ 12, citing *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). But a tip can provide the reasonable suspicion required for an investigative stop when "the facts relayed in the tip are 'sufficiently corroborated to furnish reasonable suspicion that (the defendant) was engaged in criminal activity.'" *Id.*, quoting *White*, at 331.

*State v. Hughes*, 7th Dist. Columbiana No. 17 CO 0024, 2019-Ohio-2690, ¶ 16.

**{¶21}** "A tip can be considered as part of the totality of the circumstances[.] * * * An anonymous tip may supply reasonable suspicion justifying a stop if there is independent corroboration of the tip or additional information gathered by the officer upon viewing unfolding events." *State v. Albright*, 7th Dist. Mahoning No. 14 MA 0165, 2016-Ohio-7037, ¶ 36, citing *White, supra,* at 330.

> There are two types of valid traffic stops: (1) where police have probable cause that a traffic violation has occurred or was occurring and (2) where police have reasonable articulable suspicion that criminal activity has occurred. *State v. Ward*, 7th Dist. Columbiana No. 10 CO 28, 2011-Ohio-3183, ¶ 35, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091

(1996); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*State v. McMillon*, 7th Dist. Columbiana No. 18 CO 0016, 2019-Ohio-2716, ¶ 11.

**{¶22}** "'[W]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop.'" *McMillon, supra,* at ¶ 13, citing *Ward*, *supra*, at ¶ 35, quoting *Erickson, supra,* at 11.

> During a valid traffic stop, officers may order the occupants of a vehicle out of the vehicle pending completion of the stop without violating the Fourth Amendment. *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others. *State v. Dunlap*, 7th Dist. Columbiana No. 12 CO 31, 2013-Ohio-5637, 2013 WL 6797365, ¶ 34, citing *State v. Evans*, 67 Ohio St.3d 405, 414, 618 N.E.2d 162 (1993). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Evans* at 422, 618 N.E.2d 162, citing *Terry* at 24, 88 S.Ct. 1868.

*State v. Chapman*, 7th Dist. Belmont No. 18 BE 0004, 2019-Ohio-3339, ¶ 37.

**{¶23}** "A patdown is justified when a police officer has reasonable grounds to believe that the suspect is armed and dangerous, and believes that the patdown is necessary to protect himself and others." *State v. Hicks*, 7th Dist. Columbiana No. 14 CO 10, 2015-Ohio-1324, ¶ 22, citing *Terry, supra,* at 30.

**{¶24}** In this case, during oral arguments, the parties raised an issue as to whether the traffic stop was in fact challenged and properly before the trial court. The record before us reveals it was. Appellant raised a general assertion in his motion to suppress that the stop was unconstitutional. The State, in its response, made a specific reference to the stop and that Appellant's vehicle was illegally parked when officers arrived at the

scene. The transcript from the suppression hearing provides great detail regarding Appellant's illegally parked vehicle and the Youngstown Codified Ordinance 351.03 traffic violation. Finally, in its August 28, 2019 judgment entry, the trial court specifically referenced and considered the stop and the Youngstown Codified Ordinance 351.03 traffic violation.

{¶25} As stated, YPD detective division received an anonymous tip that some individuals were at 702 Pasadena, an asserted high crime area, removing property from the residence. Officers were dispatched in reference to a disturbance. Upon arrival, Sergeant Bailey first observed Appellant's illegally parked vehicle half on the roadway and half on the devil strip in violation of Youngstown Codified Ordinance 351.03, "Prohibited Standing or Parking Places," which states in part: "No person shall * * * park a vehicle * * * in any of the following places: (s) On the strip of land paralleling the curb, or where there is no sidewalk, the property line of the abutting strip." Youngstown Codified Ordinance, Title Seven, Chapter 351, Section 351.03(s).

{¶26} Thus, Sergeant Bailey effectuated a lawful traffic stop of Appellant's vehicle after he observed that it was illegally parked. *See McMillon, supra,* at ¶ 11; Youngstown Codified Ordinance, Section 351.03(s). Sergeant Bailey activated his overhead lights, advised radio dispatch, parked behind Appellant's Oldsmobile, and approached the vehicle. (7/3/2019 Suppression Hearing T.p., p. 10). He observed Appellant sitting in the driver's seat and a television in the backseat. (*Id.*) Sergeant Bailey observed that a door to the residence was kicked in and the home appeared to have been burglarized. (*Id.*) Appellant said he resided at the house but could not provide any sort of proof of residency at that time. (*Id.* at 11).

{¶27} Officers Wallace and Martini with YPD arrived at the scene. (*Id.* at 12). Sergeant Bailey told the officers that there was a television in Appellant's backseat, that it looked like a door to the residence was kicked in, and that this may be a burglary. (*Id.*) Appellant was asked to step out of his vehicle due to the possibility that he could be armed, dangerous, and a burglar. (*Id.* at 12-13). The officers were permitted to order Appellant out of his vehicle as a matter of course. *See Chapman, supra,* at ¶ 37.

{¶28} Appellant stepped out of his car and complied with a pat-down of his person. (*Id.* at 13). It immediately became apparent to Sergeant Bailey that Appellant had a semi-

automatic handgun in the front pocket of his hooded sweatshirt. (*Id.*) Sergeant Bailey informed Officer Wallace in code that he felt a weapon on Appellant. (*Id.*) Sergeant Bailey recovered the firearm from Appellant's pocket, cuffed him from behind, and placed him under arrest. (*Id.* at 14).

{¶29} Sergeant Bailey and Officer Wallace then conducted a search incident to arrest. (*Id.*) They found a bag of cocaine and around $714 in Appellant's front pants pocket. (*Id.*) Also recovered from Appellant was a bag that contained cocaine and heroin as well as a digital electronic scale. (*Id.* at 15).

{¶30} Officer Wallace testified that he was dispatched to 702 Pasadena in reference to a possible burglary in progress. (*Id.* at 53). Upon his arrival, he observed Appellant's vehicle illegally parked halfway up on the devil strip. (*Id.* at 53, 60). Officer Wallace observed a television in the backseat of Appellant's vehicle. (*Id.* at 55).

{¶31} Officer Wallace said that dispatch sent a "Signal 8" for an investigation rather than a "Signal 1 or Signal 3" for a burglary. (*Id.* at 58-59). The prosecutor asked Officer Wallace, "So just because something is an investigation doesn't mean you can't arrest somebody when you get there?" (*Id.* at 65-66). Officer Wallace replied, "Yes; and, also, depending on how the call is given out. I don't really rely upon the call takers to give me the correct information or give me the right signals for the calls." (*Id.* at 66).

{¶32} Officer Wallace further said that a door to the residence appeared to be kicked in, damaged, and was slightly open. (*Id.* at 61-62). Officer Wallace testified that the pat-down search of Appellant revealed a firearm on his person. (*Id.* at 64). Cocaine and heroin were also discovered on the right side of Appellant's body. (*Id.* at 65).

{¶33} Thus, based on the facts presented, the officers, after receiving an anonymous tip and during a lawful traffic stop, formulated a reasonable, articulable suspicion of burglary after observing a television in the backseat of Appellant's vehicle; after determining that Appellant could not produce any proof at the time of the stop that he lived at 702 Pasadena; and after observing a door to the residence that contained a hole, was kicked in and damaged, and was slightly open. *See McMillon, supra,* at ¶ 11. The officers properly asked Appellant to step out of his vehicle due to the possibility that he could be armed, dangerous, and a burglar. *Chapman, supra,* at ¶ 37. In addition, competent, credible evidence exists to show that the officers had a reasonable, articulable

suspicion to perform a *Terry* pat-down search of Appellant. *Hicks, supra,* at ¶ 22.

**{¶34}** Accordingly, based on the totality of the circumstances, the trial court did not err in denying Appellant's motion to suppress.

## CONCLUSION

**{¶35}** For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The judgment of the Mahoning County Court of Common Pleas denying Appellant's motion to suppress following a hearing is affirmed.

Waite, J., concurs.

Robb, J., concurs.

Case No. 19 MA 0136

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**